IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRUSTEES OF THE ROOFERS LOCAL 49 WELFARE FUND, TRUSTEES OF THE PACIFIC COAST ROOFERS PENSION TRUST, and TRUSTEES OF THE GREATER PORTLAND APPRENTICESHIP AND TRAINING TRUST FUND**,<br>　　　Plaintiffs and Counter-Defendants,<br><br>　v.<br><br>**JIC CONSTRUCTION, LLC, d/b/a Sterling-Pacific**,<br><br>　　　Defendant and Counter-Claimant.<br><br><br>**JIC CONSTRUCTION, LLC, d/b/a Sterling-Pacific**,<br>　　　Third-Party Plaintiff,<br><br>　v.<br><br>**ROBERT BOLT**,<br><br>　　　Third-Party Defendant. | Case No. 3:20-cv-00259-IM<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

Cary R. Cadonau, Brownstein Rask, 1 SW Columbia Street, Suite 900, Portland, OR 97204. Attorney for Plaintiffs/Counter-Defendants and Third-Party Defendant.

Alexander M. Naito, Tarlow Naito & Summers LLP, 2505 SE 11th Ave, Suite 107, Portland, OR 97202. Attorney for Defendant and Third-Party Plaintiff.

**IMMERGUT, District Judge.**

This matter comes before the Court on Third-Party Defendant Robert Bolt's Motion to Dismiss one of three claims for relief in a Third-Party Complaint ("TPC").[1] ECF 20. Plaintiffs ("Trusts" and "Trustees") brought this ERISA action to collect unpaid fringe benefit contributions due from Defendant JIC Construction, d/b/a Sterling-Pacific ("Sterling-Pacific"). *See* ECF 1. In response to Plaintiffs' Complaint, Defendant Sterling-Pacific filed an Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint. ECF 5. Sterling-Pacific named as Third-Party Defendants the United Union of Roofers, Waterproofers, and Allied Workers, Local No. 49 (the "Union"); Russ Garnett, the Union's financial officer and business manager; and Robert Bolt, one of the Trustees. TPC, ECF 5 at 7. On January 21, 2021, Sterling-Pacific voluntarily dismissed with prejudice third-party defendants the Union and Garnett, ECF 23, leaving only the third-party claim against Bolt. Third-Party Defendant Bolt moves for an order

---

[1] Bolt also filed a Motion for Consideration of Extrinsic Evidence, in which he asks this Court to consider the collective bargaining agreement ("CBA") at issue under the "incorporation by reference" doctrine. ECF 18 at 3. Under that doctrine, a court "may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment" if it looks at "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citations omitted). Sterling-Pacific alleges fraud based on Bolt's statements concerning the CBA and alleges contents of the CBA. *See* ECF 5 at 8–11, 14–15. Sterling-Pacific stated in its response to Bolt's Motion to Dismiss that it "does not object to the Court's consideration of the CBA in evaluating Mr. Bolt's Motion to Dismiss." ECF 21 at 2 n.1. Accordingly, Bolt's Motion for Consideration of Extrinsic Evidence, ECF 18, is GRANTED, and this Court considers the CBA, ECF 19 at 3–35, in deciding Bolt's Motion to Dismiss, ECF 20.

PAGE 2 – OPINION AND ORDER

"dismissing the third claim for relief in the third-party complaint as against Bolt, and the third-party complaint in its entirety as to Bolt." ECF 20 at 2.

Bolt asserts that the TPC should be dismissed as to him because: (1) the claim fails to state a claim for relief, citing Federal Rule of Civil Procedure 12(b)(6); (2) it is not pleaded with particularity as required by Rule 9(b); and (3) it is expressly preempted by ERISA. ECF 20 at 2.

For the following reasons, this Court finds that Sterling-Pacific's fraud claim is not preempted by ERISA, but that it fails to state a claim for relief under Rule 12(b)(6) and is not adequately plead under Rule 9(b). Accordingly, Third-Party Defendant Bolt's Motion to Dismiss, ECF 20, is granted in part and denied in a part. Sterling-Pacific's fraud claim is dismissed with leave to amend.

## BACKGROUND

Plaintiffs are Trustees of three funds: Roofers Local 49 Welfare Fund ("Health Fund"), Pacific Coast Roofers Pension Trust ("Pension Fund"), and Greater Portland Apprenticeship and Training Trust Fund ("Apprenticeship Fund") (collectively, "Trust Funds"). ECF 1 at ¶ 1. Bolt is one of the Trustees.[2] ECF 5 at 7.

The Health Fund and Apprenticeship Fund are "employee welfare benefit plans" as that term is defined in 29 U.S.C. § 1002(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Pension Fund is an "employee pension benefit plan" as that

---

[2] Sterling-Pacific alleges that Bolt "is one of the Trustees" in its TPC. ECF 5 at 7. This Court accepts this allegation as true for purposes of ruling on this Motion. In his reply in support of his Motion, Bolt notes that "[a]rguably there is no legal distinction between plaintiff trustees and Bolt as an individual trustee." ECF 22 at 3 n.1; *see also* ECF 21 at 3 (Sterling-Pacific alleging that "[a]s a Trustee, Sterling-Pacific relied on Mr. Bolt's representations about the effect of early termination of the CBA, especially with respect to any future contribution obligations to the Trusts").

PAGE 3 – OPINION AND ORDER

term is defined in 29 U.S.C. § 1002(2)(A) of ERISA. ECF 1 at ¶ 2.[3] Numerous employers pay fringe benefit contributions to the Health Fund, Apprenticeship Fund and Pension Fund, and these funds are "multiemployer plans" as that term is defined in 29 U.S.C. § 1002(37)(A) of ERISA. *Id.* The Trustees of the Health Fund, Pension Fund and Apprenticeship Fund have discretionary authority and control over the management of the Trust Funds and are "fiduciaries" as that term is defined in 29 U.S.C. § 1002(21)(A) of ERISA. *Id.*

In March 2019, Defendant Sterling-Pacific and the United Union of Roofers, Waterproofers, and Allied Workers, Local No. 49 (the "Union") entered into a collective bargaining agreement (the "CBA"). ECF 5 at 8. Since at least May 2019 to date, Sterling-Pacific has been an "employer" as that term is defined in 29 U.S.C. § 152(2) of the Labor-Management Relations Act (LMRA) and 29 U.S.C. § 1002(5) of ERISA, and has been engaged in an "industry or activity affecting commerce" as that term is defined in 29 U.S.C. §§ 142(1) and (3) of the LMRA and 29 U.S.C. § 1002(12) of ERISA. ECF 1 at ¶ 3.[4] The CBA between Sterling-Pacific and the Union provides for contributions to the Plaintiffs in this case ("Trusts" and "Trustees"). ECF 1 at ¶ 8; ECF 5 at 8–9; ECF 19 at 3–35 (CBA).

On December 18, 2019, Sterling-Pacific's employees met with representatives of the Union, including Garnett, the Union's financial officer. ECF 5 at 9. At this meeting, Garnett told the employees that at the end of January 2020, Sterling-Pacific would no longer be bound by the

---

[3] In its Answer, Sterling-Pacific states that it "lacks knowledge or information to form a belief as to the allegations in paragraph 2 of the [Trustees'] Complaint, and therefore denies them." ECF 5 at 2. This Court accepts paragraph 2 of the Trustees' Complaint for purposes of deciding this Motion.

[4] In its Answer, Sterling-Pacific states that it lacks knowledge as to paragraph 3 and denies its allegations. ECF 5 at 2. This Court accepts paragraph 3 of the Trustees' Complaint for purposes of deciding this Motion.

PAGE 4 – OPINION AND ORDER

CBA[5] and that anyone working for Sterling-Pacific after that date would be penalized under their own agreements with the Union, which prevents Union members from working for non-Union employers. *Id*.

On or about January 8, 2020, Trustee Bolt and Union financial officer Garnett met with the president of Sterling-Pacific, Joe Calderon. *Id.* At this meeting, Bolt and Garnett informed Calderon that Sterling-Pacific was behind on its payments to the Trustees and recommended that Sterling-Pacific terminate the CBA early. *Id*. Bolt and Garnett represented that such an action was permissible. Based on these representations, Calderon agreed to terminate the CBA early. Bolt and Garnett instructed Calderon to write a letter to the Union to this effect, which Calderon did. *Id*. Garnett informed Calderon that Sterling-Pacific's withdrawal was "premature" and the earliest Sterling-Pacific could withdraw was February 1, 2020. *Id*. at 9–10.

After the January 8, 2020, meeting, Bolt recommended that the only way Sterling-Pacific could stay in business was to terminate the CBA. *Id*. at 10. Based in part on this "specific recommendation" by Bolt, Calderon agreed to terminate the CBA early on January 31, 2020. *Id*. at 10–11. On that date, at Garnett and Bolt's direction, Calderon sent a second letter to the Union stating it was terminating the CBA early. *Id*. at 11. Sterling-Pacific entered into a new contract with subcontractor P&C Construction that did not require Union labor and required employees to be paid "Prevailing Wage"—a sum that included, directly to the employee, amounts that had been previously withheld for fringe benefits and Union dues. *Id*. Beginning on February 1, 2020, Sterling-Pacific paid employees the full Prevailing Wage for the P&C and other projects. *Id*.

---

[5] Sterling-Pacific uses the phrases "part of the Union" and "withdraw from the Union" in its TPC. In its Response to Bolt's Motion, Sterling-Pacific clarifies that its "allegation, in substance, is that Mr. Bolt told Sterling-Pacific that it could terminate the CBA early and cease any further obligations to the Union (and correspondingly any obligations to the Trusts). This is the equivalent to 'withdrawing' from the Union." ECF 21 at 7–8.

PAGE 5 – OPINION AND ORDER

On or about February 10, 2020, Sterling-Pacific received a letter from the Union's attorney alleging that the CBA was still in effect and that Sterling-Pacific would remain liable for its obligations under the CBA for the duration of the original term. *Id*. On February 19, 2020, Plaintiff Trustees initiated this lawsuit against Sterling-Pacific seeking payment of those unpaid contributions. *Id*.; ECF 1.

On May 4, 2020, Sterling-Pacific filed its Answer, including counterclaims and third-party claims, including a fraud claim against Bolt based on his alleged statements. Sterling-Pacific seeks declaratory relief that Sterling-Pacific, the Union, and the Trustees, through their agents, agreed to terminate the CBA effective February 1, 2020. ECF 5 at 12–16. Sterling-Pacific also seeks damages in the amount it is determined to owe the Trustees for work performed after that date due to the Union's negligent misrepresentation and Garnett and Bolt's fraud. *Id*. On January 21, 2021, Sterling-Pacific voluntarily dismissed with prejudice third-party defendants the Union and Garnett, ECF 23, leaving only the third-party claim against Bolt. ECF 23.

Bolt moves to dismiss Sterling-Pacific's fraud claim on three grounds: (1) that the claim fails to state a claim for relief, citing Federal Rule of Civil Procedure 12(b)(6); (2) that it is not pleaded with particularity as required by Rule 9(b); and (3) that it is expressly preempted by ERISA. ECF 20 at 2.

## LEGAL STANDARDS

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts

PAGE 6 – OPINION AND ORDER

alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

In addition to pleading plausible allegations, a fraud claim must satisfy the heightened pleading standard of Rule 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

PAGE 7 – OPINION AND ORDER

generally." *Id*. The Ninth Circuit has explained that to satisfy Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

## DISCUSSION

### A. Sterling-Pacific Has Not Adequately Pleaded A Claim for Relief for Fraud

This Court finds that Sterling-Pacific has failed to plausibly allege its fraud claim and accordingly grants Bolt's Motion to Dismiss with respect to its Rule 12(b)(6) and Rule 9(b) grounds. This dismissal is ordered with leave to amend.

A common law fraud claim in Oregon has nine elements, which must be shown by clear and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004) (quoting *Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or. 332, 350 (1950)).

Bolt alleges that the four representations pleaded in Bolt's third claim for relief, ECF 5 at 14, do not state claims for fraud. Among other arguments, Bolt argues that the alleged representations "make no sense" because an employer cannot "withdraw from" a union, ECF 22 at 5. Each of the four alleged representations in the third claim for relief include the words "be part of the Union" or "withdraw from the Union. *See* ECF 5 at 14.

PAGE 8 – OPINION AND ORDER

This Court agrees with Bolt that language such as "withdraw from the Union" and "be part of the Union" warrants dismissal. Sterling-Pacific explains in its response brief that the "allegation, in substance, is that Mr. Bolt told Sterling-Pacific that it could terminate the CBA early and cease any further obligations . . . . This is the equivalent of 'withdrawing' from the Union." ECF 21 at 8–9. Sterling-Pacific asks that "[t]o the extent necessary, Sterling-Pacific request[s] leave to amend its Third-Party Complaint to clarify this distinction." *Id*. at 9.

In pleading fraud, a party must allege the "specific content" of the false representation. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). The allegations must be "specific enough to give defendant[] notice of the particular misconduct which is alleged to constitute the fraud charged." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). The parties seemingly agree that the "content" of Bolt's representation was not what Sterling-Pacific described in its TPC. Bolt and this Court must look elsewhere to identify the "representation" that Bolt made. Accordingly, this Court grants Bolt's Motion to Dismiss with respect to Rule 12(b)(6) and Rule 9(b) with leave to amend and does not reach Bolt's other arguments on those grounds.

**B. ERISA Does Not Preempt Sterling-Pacific's Fraud Claim**

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004). To achieve that end, ERISA exerts "powerful preemptive force." There are two strands of that force: (1) express preemption under 29 U.S.C. § 1144(a) (ERISA section 514(a)); and (2) conflict preemption based on 29 U.S.C. § 1132(a) (ERISA section 502(a)). *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019).

PAGE 9 – OPINION AND ORDER

Bolt's only preemption argument is that ERISA's express preemption provision requires that Sterling-Pacific's fraud claim be dismissed. *See* ECF 20 at 4–5 (providing text of section 1144(a) and arguing that the state law claim has a connection with and reference to plan); ECF 22 at 2–3.[6]

Within prong one of ERISA preemption (express preemption) the Supreme Court has identified two separate categories of state-law claims that "relate to" an ERISA plan and therefore are expressly preempted: (1) claims that have a "reference to" an ERISA plan, and (2) claims that have an "impermissible connection with" an ERISA plan. *Depot, Inc.*, 915 F.3d at 665 (internal quotation marks and citation omitted). "These two categories operate separately." *Id*.

The text of the first prong express preemption provision—and "in particular, the phrase 'relate to'—is broad." *Id*. As such, the "Supreme Court has rejected an 'uncritical literalism in applying' it given its potentially never-ending reach." *Id*. (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943 (2016)). A common law fraud claim concerns "a traditional area of state regulation," and Bolt therefore "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)) (internal quotation marks omitted); *see also LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998) (applying the presumption to common law fraud claim); *Depot*, 915 F.3d at 666; *cf. Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974,

---

[6] After Sterling-Pacific noted the distinction between conflict and express preemption and argued that both did not apply, ECF 21 at 4–6, Bolt again did not address conflict preemption, *see* ECF 22 at 2–3. This Court deems any preemption argument other than ERISA express preemption waived. *See Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) (holding federal preemption arguments that do not impact jurisdiction may be waived).

PAGE 10 – OPINION AND ORDER

982, 983–84 (9th Cir. 2001) (finding common law tort remedy for invasion of privacy not preempted because making ERISA administrators liable "simply cannot be said to interfere with nationally uniform plan administration"). Nevertheless, "the mere fact that States have traditionally regulated common law fraud does not, in and of itself, preclude [this] claim from being expressly preempted under § 1144(a), if allowing the claim to go forward would thwart the statutory objectives of ERISA." *Biondi*, 303 F.3d at 775 (citing *Cal. Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 330 (1997)).

### 1. "Connection With"

A state-law claim has "an impermissible connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." *Depot*, 915 F.3d at 666 (quoting *Gobeille*, 136 S. Ct. at 943) (internal quotation marks omitted). In considering the "connection with" category, the objectives of the ERISA statute provide a guide for courts, and courts must start with the presumption that Congress did not intend to supplant state laws regulating a subject of traditional state power unless that power amounts to a direct regulation of a fundamental ERISA function. *Id*. (quoting *Gobeille*, 136 S.Ct. at 943, 946). ERISA is "expressly concerned [with] reporting, disclosure, fiduciary responsibility, and the like." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (quoting *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson* , 201 F.3d 1212, 1217 (9th Cir. 2000)) (internal quotation marks omitted); *see also Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003) (noting that "state laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted").

PAGE 11 – OPINION AND ORDER

Sterling-Pacific's fraud claim against Bolt does not have an impermissible "connection with" an ERISA plan. The Ninth Circuit has explained and reaffirmed that "ERISA doesn't purport to regulate those relationships where a plan operates like any other commercial entity— for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases its office space." *Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 822 (9th Cir. 2001) (quoting *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521–22 (9th Cir. 1993)) (alterations and quotation marks omitted). The Ninth Circuit has also recognized that "the objective of Congress in crafting Section 1144(a) was not to provide ERISA [actors] with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Dishman*, 269 F.3d at 984. Accordingly, where state law claims arise from distinct, ordinary relationships between ERISA-regulated entities, and "do not touch on the [ERISA] status," those claims are not preempted. *Abraham*, 265 F.3d at 822 (finding no preemption where the state law claims arose from a non-ERISA relationship and did not affect ERISA-regulated relationship) (quotation marks and citations omitted); *see also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999) (claims not preempted where they "concern only promises that Blue Cross made as a health care plan provider to its participating physicians").

Here, Sterling-Pacific alleges common law fraud based on "the inherent duty to not make false claims" that exists "independent of any ERISA plan." ECF 21 at 6. As multiple circuits have recognized, this is a separate duty that does not touch on any ERISA-regulated relationship between the parties. For example, in *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002), the Seventh Circuit found that the trustees' fraudulent misrepresentation and fraudulent concealment claims against a beneficiary for misrepresenting his marital status on

claims forms was not preempted. The court explained that "[r]egardless of any contractual duties [the beneficiary] owed the Fund under the terms of the Plan, he had a separate and distinct duty under Illinois tort law not to misrepresent his marital status on the claims form he submitted to the Fund." *Biondi*, 303 F.3d at 777. The Second Circuit came to substantially the same conclusion in *Geller v. County Line Auto Sales, Inc*., 86 F.3d 18 (2d Cir. 1996). In that case, the Second Circuit held that ERISA did not preempt trustees' common law fraud claim against an employer and two of its officers. It explained that "allowing [the trustees] to pursue their common law fraud claim would in no way compromise the purpose of Congress and does not impede federal control over the regulation of employee benefit plans. To the contrary, [e]nsuring the honest administration of financially sound plans is critical to the accomplishment of ERISA's mission." *Geller*, 86 F.3d at 22 (citations and quotation marks omitted).

Bolt's reliance on *Board of Trustees of the Auto. Industry v. Groth Oldsmobile/Chevrolet*, No. C-09-0465 PJH, 2010 WL 2836876 (N.D. Cal. July 16, 2010), is unavailing. *See* ECF 22 at 2–3. In that case, the court found an employer's state law claims, including fraud and negligent misrepresentation, preempted by ERISA's express preemption clause. The court explained that the employer sought restitution from the plan and emphasized that any of the employer's "requested remedies would substantially impact collections under the agreement, the maintenance of current funds, and the payment of benefits to employees." *Groth*, 2010 WL 2836876, at *4. Here, in contrast, that concern is absent. Sterling-Pacific does not seek restitution from the fund; the fund will receive the same level of contributions from Sterling-Pacific regardless of the outcome of Sterling-Pacific's fraud claim. Sterling-Pacific's requested remedy—damages from Bolt for his alleged fraud—would not inappropriately impact ERISA-regulated relationships regarding the security, collection, or payment of benefits.

PAGE 13 – OPINION AND ORDER

Bolt makes a policy argument that an "employer should not be able to alter [its] ERISA regulated obligation by seeking to fund that obligation by way of seeking a fraud judgment against an individual trustee." ECF 22 at 3. But this argument is unrelated to the reasoning of *Groth*. Further, it fails to recognize that Sterling-Pacific's claim is not merely about "fund[ing] an obligation," but rather alleges fraud—something that states have a legitimate interest in regulating where the core concerns of ERISA are not impacted. As multiple circuits have recognized, "[e]nsuring the honest administration of financially sound plans is critical to the accomplishment of ERISA's mission." *Geller*, 86 F.3d at 22 (citations and quotation marks omitted). Bolt fails to articulate how Sterling-Pacific's fraud claim interferes with ERISA's objectives.

    2.   "**Reference to**"

A state-law claim has a "reference to" an ERISA plan if it "is premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival." *Depot*, 915 F.3d at 665 (quoting *Or. Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015) (internal quotation marks omitted). Bolt argues that "Sterling-Pacific's fraud claim is premised on the existence of the trusts administered by the trustees, which are ERISA plans, as without the trusts there is no basis for contribution requirement in the CBA." ECF 20 at 5. However, Bolt does not develop this argument beyond that sentence and appears to rely on the sort of "uncritical literalism" that the Supreme Court has rejected in evaluating ERISA's express preemption clause. *Depot*, 915 F.3d at 665 (citations and quotation marks omitted); *see also Dishman*, 269 F.3d at 983–84 (rejecting "relate to" argument as uncritically literal); *Biondi*, 303 F.3d at 780 (rejecting similar argument in fraud context); *cf. Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (finding contract

PAGE 14 – OPINION AND ORDER

claim not preempted where adjudication "does not require interpreting the plan or dictate any sort of distribution of benefits," and claimant "has already paid ERISA benefits" and does not dispute "the correctness of the benefits paid"); *Or. Teamster*, 800 F.3d at 1156 (finding contract claim preempted where "the key question" on which the case "turn[ed]" was eligibility of two individuals to participate in a plan, rendering analysis of the terms of the ERISA plan required; moreover, the terms allegedly breached were "terms of the ERISA plan—not separate agreements"). Here, neither party disputes the terms of the plan, nor does the fraud claim turn on this Court's analysis of the plan. *Cf. Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 287 (2d Cir. 2014) (explaining that a CBA is not necessarily "a governing plan document setting forth ERISA plan terms"). The plan terms are the foundational source of Sterling-Pacific's contribution obligation; this presents a similar situation to that in *Biondi*, where the plan terms were the foundation for Biondi's informing obligation, which he allegedly committed fraud in carrying out. A trustee allegedly committing fraud in representations relating to Sterling-Pacific's obligation merely presents a garden variety tort in the context of ERISA. *Geller*, 86 F.3d at 22–23.

Without any development of his "reference to" argument, Bolt has not met his considerable burden of showing that ERISA preempts Sterling-Pacific's generally applicable, traditional state-law cause of action.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant Bolt's Motion to Dismiss, ECF 20, is GRANTED IN PART and DENIED IN PART. The Motion is denied with respect to the ERISA preemption ground and granted with respect to the Rule 12(b)(6) and Rule 9(b) grounds. The

Court grants leave for Sterling-Pacific to amend its third-party complaint. Sterling-Pacific may file an amended complaint within 30 days of the date of this order. *See* Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED**.

DATED this 7th day of April, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge